CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
JUN 2 2 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

Orlando Pelzer,

    Plaintiff,

v.                                            Civil Action No.: 7:11-CV-00111

John Garman, et al,

    Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Orlando Pelzer, ("Plaintiff"), pro se, submits this response to Defendant's Motion for Summary Judgment. Because Defendants have failed to meet their burden of demonstrating that there is no dispute as to any material fact and because the facts set forth in Plaintiff's Statement of Material Facts and the attached evidence show that the Defendants violated Plaintiff's clearly established constitutional rights, this Court should deny defendants' Motion.

### I. Defendant Nurse Judy Roach is not entitled to qualified immunity

Defendant Nurse Judy Roach ("Roach") argues that the doctrine of qualified immunity shields her from liability from her decision to subject Plaintiff to cruel and unusual punishment by releasing him prematurely from the infirmary, forcing him to lift heavy property contrary to the doctors' orders and denying him medical care. As the Supreme Court has explained, "qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching

liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he was doing violates that right.'" United States v. Lanier, 520 U.S. 259, 270 (1997). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Firstly, Roach knew that Plaintiff was having several complications after his initial surgery, namely, not being able to have bowel movements because of the readjusting of his intestines, severe chest pains from the anesthesia, and continuous pain in the groin area, which made her decision to call Dr. John O. Marsh ("Marsh") to have him released prematurely from the infirmary cruel and unusual according to the Eighth Amendment.

Marsh gave orders to release the Plaintiff after having been paged by Roach. Roach did not explain to Marsh that the Plaintiff was still suffering from several complications from his surgery. It is clear from Plaintiff's medical record that he needed to be in the infirmary for an extended period of time in order to heal after his initial surgery.

Plaintiff had his initial surgery on 8/31/10. On 8/31/10 after the surgery, Plaintiff was in so much pain that he requested pain medication. Plaintiff was given two (2) tablets of Codine every four (4) hours. Plaintiff was also having trouble breathing so the nurse gave him some breathing exercises to try and help control the pain from being under anesthesia.

On 9/1/10 Plaintiff's medication was switched to 800 mg of Motrin instead of the Codine. Plaintiff was also given Bisacodyl suppository and tablets and Milk of

2

Magnesium. On 9/2/10 and 9/3/10 Plaintiff still could not have a bowel movement. On 9/4/10 Plaintiff complains of chest pains and still no bowel movement.

On 9/5/11 Roach lied in Plaintiff's medical records when she indicated that he "voiced discharge from med. beds" when in fact she was the one who contacted Dr. Marsh by page and had Plaintiff discharged from the infirmary even though he was still having several complications from his surgery.

Second, Roach knew that Plaintiff was not supposed to lift anything over ten (10) pounds as directed by the doctor.

When Roach had Plaintiff released from the medical bed area, he was forced to carry all of his property, which consisted of assorted mail, assorted commissary, coax cable cord, two (2) bowls, one (1) cup, ear buds, hair brush, blistex, spork, shorts, sweat pants, six (6) books, fan, vitamins, four (4) bars of soap, one (1) pair of shoes, three (3) pairs of jeans, three (3) shirts, five (5) boxers, five (5) t-shirts and all of Plaintiff's Court transcripts. All of this property obviously weighed more than ten (10) pounds.

Plaintiff also had to carry his pillow, sheets, blankets and more assorted mail and paperwork that were stored in the medical wall locker.

Plaintiff is arguing that he had to carry the property mentioned above from the bed area to the waiting area. That short distance is the cause of Plaintiff's hernia incision splitting open.

Plaintiff is not complaining about the security officer's job as it relates to his cell assignment, etc. While it is true that most inmates housed in medical don't have a lot of property with them, Plaintiff had a significant amount of his property with him. Plaintiff

did not have his locker box but he had everything that was contained in his locker box with him in medical.

Medical did not give Plaintiff a cart to carry his property until he brought his property to the medical waiting area. Plaintiff was given an order to take his property to the medical waiting area. While he was struggling to comply with the orders given to him by Roach, he felt something pop in the area of his hernia operation. Plaintiff started to feel excruciating pain in his groin area and he immediately notified Roach of this. Roach told Plaintiff to, "Stop complaining."

After the cart was brought to Plaintiff, he was forced again to lift the property and put it into the cart then push the cart to the housing unit and then unload it without any assistance from the inmate medical worker who was present, but Roach did not instruct the worker to help Plaintiff even though she knew of his lifting restrictions. (It's not the responsibility of security officers to move property to housing units). Once Plaintiff arrived at the entrance of the housing unit, he discovered that the incision had torn.

Finally, Roach denied Plaintiff medical care when he was sent back to medical by the housing entry-way officer to show her that his incision had tore and he was bleeding. Plaintiff left medical around 1:30 pm and about ten (10) minutes later he had to return back to medical because he realized that his incision had tore after lifting his property.

Roach alleges that Plaintiff's allegation that Roach subsequently denied him medical care is unsupported by the evidence which is absolutely untrue. The evidence shows that she did in fact deny Plaintiff medical care and it is clear from Roach's own statements in her pleadings.

Roach admits to looking at the Plaintiff's incision just like he states in his original complaint. It is obvious that Roach lied because she states that she recalls that there may have been "a broken stitch" when in fact Plaintiff didn't have stitches at this time. His wound was sealed with dermabond glue which became unsealed from the strain put on it from Plaintiff's lifting of the heavy property.

Plaintiff avers that Roach did in fact examine him and it is proven by her statement that, "there was no bleeding and the incision looked closed and aligned." Plaintiff had to be bleeding in order for security to make an emergency call to have him sent back to medical.

Roach's statements are contradictory because she says first that there may have been a broken stitch then states in the same sentence that the incision looked closed and aligned.

Plaintiff noticed a substantial amount of blood running down his leg and his boxers were soaked with blood as well. When he arrived back at medical Nurse Flint and the c/o informed Nurse Roach that the Plaintiff had come back. Roach replied, "What now Pelzer?" Plaintiff stated that, "I'm bleeding. My incision has split open." Plaintiff then opened his pants and showed Roach his open wound and she stated that, "It's okay, it's supposed to bleed." Roach further stated that, "If you have any more problems then sign up for sick call."

Plaintiff was instructed to return to his housing unit. When he got back to the housing unit c/o Graham received a call from Roach telling him to tell Plaintiff to not lay down and to go outside. Plaintiff went outside as instructed and stood by the entryway until they called him to get his mattress. After receiving his mattress, Plaintiff called his

family and told them that after he was released from medical he was made to carry his property after being told by the doctor not to lift more than ten (10) pounds and his incision split open as a result.

Plaintiff's family contacted the prison and informed the administration that Plaintiff was in serious medical need and Capt. Sampson (female) sent c/o Lokey to Plaintiff's cell and he saw that Plaintiff was bleeding profusely and Lokey got on his walkie-talkie and called somebody and told them that Plaintiff was in fact, "bleeding and busted wide open." Lokey asked Plaintiff if he wanted him to carry him back to medical because of the seriousness of the bleeding. Plaintiff replied, "No, I'll walk."

When Plaintiff got back to medical, Nurse Richmond and Capt. Sampson were waiting for him. Richmond laid Plaintiff on the examination table and took off the blood soaked towel that Plaintiff had pressed up against his wound for at least six (6) hours. After seeing that the wound was actually open, she paged Marsh waited for him to call back so that she could inform him of the situation. Marsh instructed her to pack the wound with wet gauze and wrap his waist up with wet gauze then wrap it again with dry gauze.

Plaintiff had to wait until the next morning in order to go to UVA emergency room so that he could have the tore incision treated. On 9/6/10 Plaintiff arrived at UVA, the doctors there told him that the incision could not be resealed because of possible infection setting in from being exposed for such a long period of time. Plaintiff was given antibiotics just in case there might be infection in the wound and he was sent back to the prison pending a follow-up visit.

On 9/7/10 Plaintiff was still "having significant pain" and the Ibuprofen that were given to him, instead of the proscribed Oxycodone 5mg by the doctor, were not helping him at night. From 9/7/10 to 12/21/10, Plaintiff suffered with pain and infection.

On 12/21/10 Plaintiff was treated at UVA for a right groin wound infection at the previous site of inguinal hernia repair. Plaintiff asserts that he would not have suffered from the pain and infection and he would not have had to undergo a second surgery if it weren't for Roach's negligent actions.

## **CONCLUSION**

For all the above reasons, Defendants' Motion for Summary Judgment should be denied.

/s/ Orlando Pelzer
Orlando Pelzer #1184761
Augusta Correctional Center
1821 Estaline Valley Road
Craigsville, Virginia 24430

STATE OF VIRGINIA
CITY/COUNTY OF Augusta
ACKNOWLEDGED BEFORE ME
THIS 17th DAY OF June YEAR 2011
_____ #709596
NOTARY PUBLIC
MY COMMISSION EXPIRES: 7/31/2011

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing, Request for Production of Documents, was mailed to Rosalie Pemberton Fessier, P.O. Box 108, Staunton, Virginia 24402-0108, counsel of record for the Defendants on this 16th day of June, 2011.

/s/ *Orlando Pelzer*
Orlando Pelzer #1164761
Augusta Correctional Center
1821 Estaline Valley Road
Craigsville, Virginia 24430

STATE OF VIRGINIA
CITY/COUNTY OF Augusta
ACKNOWLEDGED BEFORE ME
THIS 17th DAY OF June YEAR 2011
*signature* #789576
NOTARY PUBLIC
MY COMMISSION EXPIRES: 7/31/2011