CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 02 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| ORLANDO PELZER, | Civil Action No. 7:11-cv-00111 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| JOHN GARMAN, *et al.*, | By: Samuel G. Wilson |
| Defendants. | United States District Judge |

This is an action pursuant to 42 U.S.C. § 1983 for damages by plaintiff Orlando Pelzer, a Virginia inmate proceeding *pro se*, alleging that the defendants, officials and nurses at Augusta Correctional Facility (Augusta), violated his Eighth Amendment right to be free from cruel and unusual punishment by their deliberate indifference to his serious medical needs. In an earlier order, the court dismissed without prejudice Pelzer's claims against all defendants except one, Judy Roach, a nurse at Augusta. The matter is now before the court on Nurse Roach's motion for summary judgment. The court finds that there is a genuine issue of material fact as to whether Nurse Roach was deliberately indifferent to Pelzer's serious medical needs in violation of his Eighth Amendment rights. Accordingly, the Court denies Nurse Roach's motion for summary judgment.

## I.

The following facts are recited in the light most favorable to Pelzer. See Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985) (stating that on summary judgment, "[t]he facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to [the] plaintiff").

Pelzer is a Virginia prison inmate housed at Augusta. On August 31, 2010, Pelzer underwent hernia repair surgery at the University of Virginia. He was housed in the Augusta medical ward during recovery and was under restrictive orders not to lift anything weighing over ten pounds. Pelzer was discharged from the medical ward by Dr. John Marsh at Nurse Roach's urging on September 5, 2010.[1] At this time, Pelzer was unable to have bowel movements, suffered from severe chest pains from the anesthesia, and suffered from continuous groin pain. He had a large amount of assorted personal property, weighing well over ten pounds, with him in the medical ward. Pezler was forced to carry his property from the bed area to the waiting area, where he was given a cart on which to carry his property.[2] During this time, he began to feel a sharp pain in his groin area. Pelzer notified Nurse Roach, who told him, "Stop complaining." (Pl's. Resp. to Def's. Mot. for Summ. J. 4.) Pelzer then lifted his property onto the cart provided, pushed the cart to his new cell assignment, and removed his property from the cart without assistance. After entering his cell, Pelzer discovered his incision had reopened. He returned to the medical ward and was denied medical care by Nurse Roach after she told him, "It's okay, it's supposed to bleed."[3] (Pl's. Resp. to Def's. Mot. for Summ. J. 5.) Pelzer then called his family and told them what happened. After his family contacted the prison, the prison sent a correctional officer to Pelzer's cell, who observed that Pelzer was "bleeding and busted wide open." (Pl's. Resp. to Def's. Mot. for Summ. J. 6.) Pelzer returned approximately six hours after originally being discharged and was admitted to the medical ward for the night after Nurse

---

[1] Affidavits submitted by Nurse Roach and Dr. John Marsh aver that the decision to discharge Pelzer was Dr. Marsh's.

[2] Nurse Roach disclaims involvement in that process. (Nurse Roach Aff. 2.)

[3] According to affidavits submitted by Nurse Roach and Nurse Nancy Richmond, Nurse Roach's shift was ending when Pelzer returned. After briefly being seen by Nurse Roach, he was examined by Nurse Richmond, who observed a two-and-a-half-inch to three-inch tear in his incision.

2

Richmond observed that his incision was bleeding. He was taken to the hospital at the University of Virginia for treatment the following day and was later treated at the University of Virginia for infection of the incision.

## II.

Pelzer alleges that defendants, while acting with deliberate indifference, neglected his medical needs in violation of the Eighth Amendment. Nurse Roach maintains that she has qualified immunity from Pelzer's § 1983 claim and that she is entitled to prevail on the underlying merits as well. The court finds that there is a material question of fact as to whether Nurse Roach violated Pelzer's Eighth Amendment rights.

Summary judgment is proper where, viewing the facts in the light most favorable to the plaintiff, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating the absence of any material issue of fact, but need not support its motion with affidavits or other materials negating the nonmoving party's claim. Celotex Corp. v.Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party may not rely upon mere allegations or denials contained in its pleadings, but must come forward with some form of evidentiary material allowed by Rule 56 demonstrating the existence of a genuine issue of material fact requiring a trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Celotex , 477 U.S. at 324. A genuine issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the nonmoving party. Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009).

3

Here, Pelzer claims Nurse Roach violated the Cruel and Unusual Punishment Clause of the Eighth Amendment by showing deliberate indifference to his medical needs. To succeed on a cruel and unusual punishment claim, a prisoner must prove both that "the deprivation of a basic human need was 'sufficiently serious,'" and that "the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). That is, the prisoner must establish the actions of the prison officials were both objectively and subjectively deficient.

A serious medical condition satisfies the objective prong for a claim of improper medical attention. Johnson, 145 F.3d at 167 (relying on Hudson v. McMillian, 503 U.S. 1, 9 (1992); Estelle v. Gamble, 429 U.S. 97, 105 (1976); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). A medical condition is serious if "'it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention.'" Martin v. Bowman, Nos. 94-6246, 94-6256, 1995 WL 82444, at *1 (4th Cir. Feb. 24, 1995) (quoting Gaudreault v. Mun. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). Courts in this circuit have recognized a wide range of medical conditions as serious. See Howard v. Smith, 87 Fed. Appx. 309, 310 (4th Cir. 2004) (finding a broken or dislodged bone could be a serious medical condition); Clinkscales v. Pamlico Corr. Facility Med. Dep't, No. 00-6798, 2000 WL 1726592, at *1 (4th Cir. Nov. 21, 2000) (finding a plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it to be a serious medical condition); Brice v. Va. Beach Corr. Ctr., 58 F.3d 101 (4th Cir. 1995) (finding a broken jaw to be a serious medical condition); Finley v. Trent, 955 F. Supp. 642 (N.D.W.Va. 1997) (finding arthritis to be a serious medical condition where it caused chronic pain and affected the prisoner's daily activities); Browning v. Snead, 886 F. Supp. 547 (S.D.W.Va. 1995) (finding a

4

detached retina to be a serious medical condition). More to the point, a hernia might in some circumstances be recognized as a serious medical condition. See Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008) (stating in dicta that a ventrial hernia could be a serious medical condition in certain circumstances); Garrett v. Elko, No. 95-7939, 1997 WL 457667 (4th Cir. Aug. 12, 1997) (finding that a large hernia that caused the prisoner severe pain, limited his mobility for an extended period of time, and had become life threatening to be a serious medical condition); see also Johnson v. Doughty, 433 F.3d 1001, 1014 (7th Cir. 2006) (holding that a hernia can be an objectively serious medical condition); Jones v. Johnson, 781 F.2d 769, 771–72 (9th Cir. 1986) (same).

A showing of deliberate indifference to a serious medical condition by prison officials satisfies the subjective prong of the cruel and unusual punishment inquiry. Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (relying on Wilson v. Seiter, 501 U.S. 294, 303 (1991)). "The subjective component requires proof of more than mere negligence but less than malice." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). It is not enough that the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but she must also actually draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "A prison official is not liable if he 'knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.'" Johnson, 145 F.3d at 167 (quoting Farmer, 511 U.S. at 844).

An open, bleeding incision from a hernia operation qualifies as a serious medical condition. Looking at the facts in the light most favorable to Pelzer, Nurse Roach showed deliberate indifference to his medical needs, and both the necessary objective and subjective prongs of the test have been met. According to Pelzer, he felt a sharp pain in his groin after

5

carrying his property to the medical waiting area and notified Nurse Roach of such, but instead of re-examining his incision Nurse Roach was dismissive, telling Pelzer to, "Stop complaining." When Nurse Roach learned Pelzer's incision had reopened after he returned to the medical ward she denied him medical care despite noting that his incision was bleeding. Pelzer only returned to the medical ward and received treatment after his family contacted the prison. Taken together a rational factfinder could find these amount to Nurse Roach knowing of and deliberately ignoring Pelzer's medical needs, supporting a finding of deliberate indifference.[4]

### III.

For the reasons stated, the court denies Nurse Roach's motion for summary judgment.

**Enter**: November 2, 2011.

UNITED STATES DISTRICT JUDGE

---

[4] Nurse Roach also claims she is entitled to qualified immunity. Because freedom from deliberate indifference to serious medical conditions is a clearly established Eighth Amendment right, the test for qualified immunity folds into the test on the merits. Accordingly, Nurse Roach does not have qualified immunity against Pelzer's claims.

6