UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| Orlando Pelzer, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 7:11-CV-111-MFU-RSB |
| | ) | |
| John Garman, et. al, | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S OMNIBUS MOTION *IN LIMINE*

NOW COMES Plaintiff Orlando Pelzer ("Pelzer"), by and through counsel, and moves in limine to preclude at trial the standard of care testimony of Dr. John O. Marsh, MD; preclude at trial any reference at trial to collateral sources of income, including but not limited to government medical benefits; and, preclude at trial any reference to the referral for mental health services. In support of this motion, Pelzer states as follows:

### Background



Pelzer filed this action against Defendant Judy Roach, RN ("Nurse Roach") for mistreatment following outpatient hernia surgery during his incarceration at Augusta Correctional Center. In the days following Pelzer's surgery, Nurse Roach forced Pelzer to carry a heavy load of personal property to his jail cell in knowing contradiction of his physician's post-operative instructions. As a result, his surgical incision split open, and he was required to return to the Emergency Department at the University of Virginia Medical Center the next day to close the wound.

The critical issue in this case is whether Nurse Roach's knowing disregard of the discharge instructions violates the Eighth Amendment, which prohibits deliberate indifference to an inmate's serious medical needs and includes "intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97 (1976). The test to decide whether a prison nurse acted with deliberate medical indifference is if he or she knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison nurse's subjective knowledge of a substantial risk of harm may be inferred if the risk was obvious. Id. at 829.

Intentional interference with prescribed treatment is a recognized basis of recovery under the Eighth Amendment. Erickson v. Pardus, 551 U.S. 89 (2007) (holding that a prison medical staff's refusal to follow prescribed treatment in order to accommodate prison disciplinary policy may violate the Eighth Amendment); Smith v. Smith, 589 F.3d 736 (4th Cir. 2009) (holding that a prison medical staff's refusal to administer prescribed treatment for a foot infection may violate the Eighth Amendment); Easter v. Powell, 467 F. 3d 459 (5th Cir. 2006) (holding that a prison medical staff's refusal to provide prescribed medication may violate the Eight Amendment); Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (holding that a prison medical staff's refusal to treat an inmate or otherwise intentionally treat him incorrectly may violate the Eighth Amendment); Boretti v. Wiscomb, 930 F. 2d 1150 (6th Cir. 1991) (holding that a prison medical staff's refusal to follow discharge instructions for pain medication and wound care following surgery may violate the Eighth Amendment); Mandala v. Coughlin, 920 F. Supp. 342 (E.D. N.Y. 1996) (holding that a prison medical staff's refusal to administer a prescribed diet that resulted in an ulcer and stomach pain may violate the Eighth Amendment).


Frith &
Ellerman
LAW FIRM, PC

**1.  Motion *In Limine* to Preclude Standard of Care Testimony of Dr. Marsh**

Nurse Roach identified Dr. Marsh as an expert in "correctional medicine" who will testify that "the actions of Nurse Roach, as described in the medical records and her affidavit, were within the applicable standard of care, and were appropriate and reasonable." <u>See attached</u> <u>Defendant's Expert Witness Disclosure</u>. The proffered standard of care testimony is irrelevant and would invade the province of the jury in determining the ultimate issue at trial. Although doctors may generally testify to nursing standards of care, <u>see</u>, <u>e.g.</u>, <u>McMillan v. Durant</u>, 439 S.E.2d 829 (S.C. 1993), <u>King v. State ex rel. Dep't of Health and Hospitals</u>, 728 So.2d 1027 (La. App. 1999), this is not a case of medical negligence and the expert testimony would mislead the jury. As an aside, Pelzer concedes that Dr. Marsh is qualified on the issue of causation, but disclaims that he may testify on the issue of the standard of care.

### i. The Standard of Care Testimony is Irrelevant

In a claim of deliberate indifference, a party need not present standard of care testimony. <u>See</u> <u>Ledford v. Sullivan</u>, 105 F.3d 354, 358 (7th Cir. 1997) (holding that an expert witness is not necessary to support a claim of deliberate indifference). Indeed, a claim of deliberate indifference is readily distinguishable from medical malpractice cases. <u>See</u> <u>Ledford</u>, 105 F.3d at 358-60 ("Because the test for deliberate indifference is more closely akin to criminal law than to tort law, the question of whether the prison officials displayed deliberate indifference toward [plaintiff's] serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment. The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care.").



The proffered standard of care testimony of Dr. Marsh is irrelevant to a claim of deliberate indifference and would merely confuse the jury as to the material issue. The jury

does not need to decide whether Nurse Roach violated the prevailing standard of nursing care at the prison; rather, they must answer rather whether Nurse Roach violated "'broad and idealistic concepts of dignity, civilized standards, humanity, and decency'" in disobeying the discharge instructions. Estelle, 429 U.S. at 102 (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)); Hathaway v. Coughlin, 37 F.3d 63, 68 (2d Cir. 1994) (holding that the issue for the jury to decide is "whether the treating physician or other prison official was deliberately indifferent to a prisoner's serious medical needs, not whether the doctor's conduct is actionable under state malpractice law."). Further, no expert testimony is necessary, *supra*, for the jury to decide that failing to follow a physician's instructions following a hernia surgery creates a substantial risk of harm.

### ii. The Standard of Care Testimony Goes to Ultimate Issue

The standard of care testimony would also invade upon the province of the jury to decide the ultimate issue at trial, which is whether Nurse Roach acted with deliberate indifference. No expert may testify as to "what constitutes 'deliberate indifference'" for the purposes of Section 1983, as "deliberate indifference" is a legal term that must be defined for the jury by the court, and may not be defined by expert testimony that simply tells the jury how to rule. Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994). "Although an expert's opinion may 'embrace[] an ultimate issue to be decided by the trier of fact[,]' Fed.R.Evid. 704(a), the issue embraced must be a factual one." Id. Here, Dr. Marsh's testimony that Nurse Roach met the applicable nursing standard of care during her treatment of Pelzer could mislead the jury to think that by meeting the standard of care, Nurse Roach met her constitutional obligations.

The issue to be decided at trial is not whether Nurse Roach acted within the acceptable standards of her profession, but rather whether her decision to withhold treatment in violation of the discharge instructions constituted cruel and unusual punishment. The trial turns not on a

4

medical question, but a legal question that must be determined by the jury. By allowing Dr. Marsh to testify as to a standard of care, the jury would confuse the issue to be decided.

**2. Motion *In Limine* to Preclude Any Reference to Government Medical Benefits**

Pelzer moves to exclude any reference at trial collateral sources of income that paid for his medical care at Augusta Correctional Center, including but not limited to his receipt of past and future government medical benefits. In <u>Peterson v. Willie</u>, 81 F.3d 1033, 1039 (11th Cir. 1996), a Section 1983 case, counsel for the correctional center told the jury that the plaintiff's past and future medical care would be "free" or at "no cost" to him under Medicaid. The plaintiff did not request damages for past expenses, just as Pelzer is not now requesting damages for past expenses, but only for future expenses and compensation for pain and suffering. <u>Id.</u>

Although Pelzer might be distinguished from <u>Peterson</u>, as he remains Medicaid-eligible, any award would otherwise offset future benefits. Further, as the court noted in <u>Peterson</u>, there is a danger that any reference to "free" government medical benefits will "spill over" into the determination of liability and prejudice his claim. <u>Id.</u>at 1040.

**3. Motion *In Limine* to Preclude Any Reference to Referral for Mental Health Services**



Pelzer moves to exclude any reference at trial to the prison medical staff's referral of Pelzer for mental health services more than three months after the mistreatment in the instant case. <u>See</u> <u>attached</u> <u>Augusta Correctional Center Mental Health Referral</u> (Dated: December 1, 2010). As a threshold matter, under Rule 403, Fed. R. Evid., evidence of referrals for mental health services that are both unrelated in time and subject to the present case are so highly inflammatory that they should be excluded due to the danger of unfair prejudice.

Further, the mental health evaluation conclusively stated that Pelzer had no difficulty perceiving or remembering the events in question; the psychologist stated, "[t]he offender is alert, cooperative, and oriented. There is no evidence that he is experiencing any perceptual disturbances." Without any relevance to Pelzer's perception or ability to recall his mistreatment, he asks that no reference be made of it at trial.

WHEREFORE, Pelzer respectfully requests that the Court preclude at trial the standard of care testimony of Dr. John O. Marsh, MD; preclude at trial any reference at trial to collateral sources of income, including but not limited to government medical benefits; and, preclude at trial any reference to the referral for mental health services.

Respectfully submitted,

ORLANDO PELZER

By: _____

Robert E. Dean, Esquire (VSB #80288)
*Counsel for the Plaintiff*
Frith & Ellerman Law Firm, P.C.
P. O. Box 8248
Roanoke, Virginia 24014
Telephone: (540) 985-0098
Facsimile: (540) 985-9198
Email: rdean@frithlawfirm.com



CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2012, I have electronically filed this document with the Clerk of the Court using the CM/ECF system and provided a true copy of the foregoing motion by email to Rosalie P. Fessier, counsel for defendant.

By:  _____

Robert E. Dean, Esquire (VSB #80288)
*Counsel for the Plaintiff*
Frith & Ellerman Law Firm, P.C.
P. O. Box 8248
Roanoke, Virginia 24014
Telephone: (540) 985-0098
Facsimile: (540) 985-9198
Email: rdean@frithlawfirm.com



**Exhibit A**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

ORLANDO PELZER,      )
                             )
      *Plaintiff*      )
                             )
v.                    )        Civil Action No.: 7:11-CV-111-MFU-RSB
                             )
JOHN GARMAN, et al,      )
                             )
      *Defendants*      )

**DEFENDANT'S EXPERT WITNESS DISCLOSURE**

Defendant Judy Roach, by counsel, files her Rule 26(a)(2)( C) disclosures in accordance

with the Court's Scheduling Order as follows:

      1.      John O. Marsh, M.D.
                  Middlebrook Family Practice
                  36 Cherry Grove Road
                  Middlebrook, VA 24459

Dr. Marsh is expected to provide expert medical opinions on the issue of standard

of care and the appropriateness of the nursing care provided by Nurse Roach  and on the issue of

causation. Dr. Marsh has expert knowledge of the standards applicable to Nurse Roach as a nurse

at a correctional facility, and of what conduct conforms or fails to conform to those standards, and

in particular the standards applicable to the care and assessment of an inmate's surgical incision

post hernia surgery.   Dr. Marsh has had an active clinical practice in correctional medicine since

1996, and during the time at issue and within one year of the alleged acts in this case.

LAW OFFICES
TIMBERLAKE, SMITH,
THOMAS & MOSES, P.C.
STAUNTON, VIRGINIA
540/885-1517
fax: 540/885-4537

It is expected that Dr. Marsh will describe Plaintiff's medical condition after his hernia repair and the course of the care and treatment of Plaintiff while he was housed at Augusta Correctional Center, the details of which are contained in Plaintiff's medical records (Doc 15-1), the Affidavit of John Marsh, M.D. (Doc 15-2) and the Affidavit of Judy Roach, (Doc 15-1) which are incorporated herein by reference.  It is expected that Dr. Marsh will testify that infection is a known risk after surgical hernia repair and that infection can occur in the absence of negligence or deficient care. It is expected that Dr. Marsh will testify that the actions of Nurse Roach, as described in the medical records and her affidavit, were within the applicable standard of care, and were appropriate and reasonable.  It is expected that Dr. Marsh will testify that it was reasonable and appropriate for Nurse Roach, who was ending her shift at 4:00 p.m. on September 5, 2010, to believe that there was no urgent or emergent need for treatment and that it was reasonable and appropriate for her to expect Nurse Flint, who was treating Plaintiff at that time, to make the appropriate judgments respecting treatment.

It is expected that Dr. Marsh will describe Plaintiff's medical course after September 5, 2010, the particulars of which are contained in Plaintiff's medical records (Doc 15-1) which are incorporated herein by reference.  Specifically, it is expected that Dr. Marsh will testify that separation of the incision and the subsequent infection were superficial, and did not involve the actual hernia repair itself.  It is expected that Dr. Marsh will testify that the separation of the incision and the infection were properly treated and eventually healed with no lasting effects.  It is expected that Dr. Marsh will testify that separation of Plaintiff's incision and the subsequent infection were not a proximate cause of any act or omission by Nurse Roach.

LAW OFFICES
TIMBERLAKE, SMITH,
THOMAS & MOSES, P.C.
STAUNTON, VIRGINIA
540/885-1517
fax:  540/885-4537

2

Dr. Marsh will base his opinions upon Plaintiff's medical records, the Affidavit of Judy Roach, and the Affidavit of John O. Marsh, M.D.  as well as his education, training and experience.

The above summary of the expert's proposed testimony is not intended to be the whole of his expected testimony.  The sentence structure and language is solely that of counsel and represents counsel's choice of words.  Defense expert may elect to express his respective opinions with different terminology and is expected to elaborate on the substance and basis for his opinions.

2.     Defendant reserves the right to call as an expert any expert identified by the Plaintiff or any of Plaintiff's treating health care providers, who are expected to testify consistently with Plaintiff's medical records.

JUDY ROACH

By Counsel

LAW OFFICES
TIMBERLAKE, SMITH,
THOMAS & MOSES, P.C.
STAUNTON, VIRGINIA
540/885-1517
fax:  540/885-4537

By: _____/s/ Rosalie Pemberton Fessier_____
        Rosalie Pemberton Fessier
        VSB # 39030
        Attorney for Defendant Roach
        TIMBERLAKE, SMITH, THOMAS & MOSES, P. C.
        25 North Central Avenue
        P. O. Box 108
        Staunton, VA 24402-0108
        phone:  540/885-1517
        fax:    540/885-4537
        email:  rfessier@tstm.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2012, I have electronically filed this document with the Clerk of the Court using the CM/ECF system.  I further certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

        Orlando Pelzer, #1184761
        Lawrenceville Correctional Center
        1607 Planters Road
        Lawrenceville, VA   23868

        _____/s/ Rosalie Pemberton Fessier_____
        Rosalie Pemberton Fessier
        VSB No. 39030
        Attorney for Defendant Roach
        TIMBERLAKE, SMITH, THOMAS & MOSES, P.C.
        P. O. Box 108
        Staunton, VA   24402-0108
        phone: 540-885-1517
        fax:    540-885-4537
        email:  rfessier@tstm.com

F:\61\RVPF\DRM\Pelzer v. Garman-FF\Pleadings\expert designation 01-20-12.wpd

LAW OFFICES
TIMBERLAKE, SMITH,
THOMAS & MOSES, P.C.
STAUNTON, VIRGINIA
540/885-1517
fax:  540/885-4537

4

**Exhibit B**

TM
MH-1

## Augusta Correctional Center
### Mental Health Services
### Referral Form

RECEIVED

DEC 0 6 2010

PSYCHOLOGY DEPARTMENT

12-1-10
**Date**

D2-57
**Housing Unit**

Pelzer, Orlando
**Inmate Name**

1184761
**Inmate Number**

**Reason for referral:**

unrealistic perception of current condition —
Repeatedly claims internal organs are infected
+ damaged — (No diagnostic basis for claims)
Denies healing or progress —

**Referred by:** R Adkins RN       **Date:** 12-1-10

**Psychologist:** T. Miller, MA       **Date:** 12-7-10

**Action Taken:** Offender goes to Medical (has a pass) on 12/2 –
12/31 to have his surgery wound washed out. The pass
is signed by nurse Richmond. Offender states the wound is
infected and he has been prescribed antibiotics. Offender stated
that he talked to DR Mdrah today and will be returning
to MCV for surgery to clean out the infected wound.
The offender is alert cooperative and oriented. There is no evidence
that the offender is experiencing any perceptual disturbances.